## Commonwealth v. Himmler

*M. A. Kornreich,* for Commonwealth.

FLICK, P. J., September 16, 1964.—On information of Warren Borough Patrolman T. J. Domback, defendant was charged with violation of section 1016 (a) of The Vehicle Code of April 29, 1959, P. L. 58, in that

while travelling north on Buchanan Street in Warren Borough he failed to come to a full stop before entering the intersection of Buchanan Street and Madison Avenue, there being an official stop sign to warn northbound traffic on Buchanan Street. Defendant waived a hearing before a justice of the peace and filed a cash bond for appearance and trial in the court of quarter sessions. The trial was held September 10, 1964, with the assistant district attorney appearing for the Commonwealth and defendant appearing without counsel. The court asked defendant if he wished to be represented by counsel or to conduct his own defense, and defendant stated to the court that he had received legal advice in connection with his defense and he wished to conduct the defense himself. He was then informed that he could conduct his own defense if he wished to do so; that he would be given an opportunity to fully cross-examine all Commonwealth witnesses and to fully testify on his own behalf.

Called as a witness for the Commonwealth, Officer Dombeck testified that he saw defendant operating his motor vehicle north on Buchanan Street toward the intersection with Madison Avenue; that on the east side of Buchanan Street, between the sidewalk and the curb and facing northbound traffic, is a regulation stop sign, located 48 feet south of the crosswalk at the south side of the intersection; that defendant drove north on Buchanan Street, past the stop sign, and through the Madison Avenue intersection without bringing his vehicle to a full stop; that the officer then followed defendant, stopped him in the next block and informed him that an information would be filed charging him with failure to stop at the intersection.

Defendant was sworn and took the stand on his own behalf. He testified that he did not intend to dispute any of the officer's testimony; that he based his defense on a claim that the stop sign at this intersection was

illegal. Defendant then produced a copy of the 1955 Manual of Regulations for Official Traffic Signs, Signals and Markers. He called the court's attention to the statement on page 43 that the stop sign "Shall have a white message and border on a red background", and further called the court's attention to the fact that the stop sign at the intersection in question is orange and black as provided in the 1943 Manual of Regulations and not red and white as provided in the 1955 Manual of Regulations. Defendant further argued that the stop sign in question is illegal because of its location, 48 feet south of the crosswalk. He called the court's attention to the provisions on page 45 of the 1955 Manual and figure 26 on page 49 showing location of stop signs at various types of intersections.

Whoever advised defendant in regard to his defense in this action and supplied him with the current 1955 Manual of Regulations, did not make a sufficient study of the manual. On page XII, opposite page 1, there is an introduction over the facsimile signature of Joseph J. Lawler, Secretary of Highways. The first paragraph reads as follows:

"This edition of the Manual of Regulations for Official Traffic Signs, Signals and Markings revises and supersedes the Manual of Regulations published in 1943." Subsequent paragraphs provide that the manual has been prepared by the Pennsylvania Department of Highways pursuant to section 1105 of The Vehicle Code; that it establishes standards and regulations for signs, signals and markings which shall be used on all highways throughout the Commonwealth of Pennsylvania; that local authorities in the Commonwealth, as provided in The Vehicle Code, are directed to follow the uniform regulations for the design, location, erection, operation and maintenance of all traffic signs, signals and markings, as set forth in the manual, and no other system shall be regarded as official; that local

ordinances regulating traffic are not enforceable unless at the time and place of the desired enforcement, official signs are in place.

The last paragraph reads as follows: "This Manual applies to all traffic control devices which are erected after its publication. Official signs which were designated and erected under the provisions of the 1943 Manual, prior to the publication of this Manual, need not be removed immediately, but when they are replaced, standard signs as shown in this edition shall be used." From the foregoing provisions, it is perfectly clear that the stop sign involved in this case is a legal sign although it is black and orange and not red and white as provided in the 1955 manual. The existing sign complies with the provisions of the 1943 manual and has not as yet been replaced.

As to defendant's claim that the sign is located too far away from the intersection, the 1955 manual provides, on page 45:

"The STOP sign shall be erected 4 feet in advance of the Crosswalk facing approaching traffic as shown in Figure 26." Figure 26 shows six different types of intersections, of which one is an Urban Intersection with Crosswalks. This figure shows the distance from the sign location to the nearest line of the crosswalk as "4' minimum", thus the only requirement under the regulations is that the sign must be at least 4 feet in advance of the Crosswalk. Most of the distances shown on the drawings contained in the manual are indicated as "Minimum", or "Not less than — feet". On page 44, under the heading "Details of Stop Signs", the following appears: "Care must be exercised as to the location, height and visibility so that when erected it will fulfill the purpose for which it is intended."

The drawing which was placed in evidence as Commonwealth's exhibit A shows that the stop sign in question is located between the curb on the east side of

Buchanan Street and the sidewalk running along the east side of said street, at a point 48 feet south of the south line of the marked crosswalk on the south side of the intersection. In between the stop sign and the intersection there are two trees and a telephone pole which would obscure visibility of the stop sign if it was located closer to the crosswalk. Under these facts it is clear that the location of the sign is lawful under the 1955 Manual of Regulations.

As defendant admitted his failure to stop, and the stop sign which he passed is a legal sign as above shown, the court must find that defendant has been proven guilty as charged and an order is entered as follows:

ORDER

And now, September 16, 1964, for the reasons stated in the foregoing opinion, defendant Robert J. Himmler is ordered to appear before the court for sentence on September 25, 1964, unless the statutory fine of $5.00 and costs of this prosecution in the amount of $42 are paid prior to that date.